# McMurray's Appeal.

1. Where one party to a contract is dead, it is not enough to render a witness incompetent, under the Act of 1869, to prove the contract, that he is directly interested in the question; he must also be directly interested in the case before the court.

2. In the settlement and distribution of the estates of decedents, the Orphans' Court has undoubted jurisdiction to decide upon the claims of creditors.

3. Where the cestui que trust can compel the specific performance by the trustee, of a contract creating a trust, it can also be enforced by the trustee against him.

4. A., B. and C. were tenants in common with several others of a large tract of land.   Some of the parties desiring to sell, it was agreed that A. and B. should purchase the property, in certain specified proportions, for themselves and part of the original owners, including C., and take the title in their own name as trustees.   The conveyance having been made to A. and B., they executed mortgages to the grantors, each covering the entire tract, to secure the purchase-money, and one of these mortgages was assigned to C., under the verbal agreement that he would satisfy it, and pay the balance of his proportion of the purchase-money, after which A. and B. were to convey to him his share of the land.   Held, that

this contract constituted a valid trust in favor of C., not within the statute of frauds, which could be enforced by him against A. and B.; or, by A. and B. against him or his legal representatives.

December 11th 1882.    Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Appeal from the Orphans' Court of *Allegheny county :* Of October Term 1882, No. 148.

This was an appeal by John McMurray, guardian of Samuel H. Watters, Catharine Watters and William Watters from a decree of said court, directing George W. McMurray, administrator of Samuel Watters, deceased, to pay to John W. Chalfont and C. B. Herron, the balance of decedent's estate in his hands for distribution, on account of their claim against said estate.

At the hearing for distribution, before the Orphans' Court, Orvis, J., found the facts to be substantially as follows : Samuel Watters, the decedent, Robert Marshall, John W. Chalfont, C. B. Herron, C. H. Armstrong, James H. Mitchell, C. H. Spang and others held a large tract of coal lands in South Fayette Township as tenants in common, the legal title to which was in the three persons last mentioned.    Desiring to sell this land, it was verbally agreed between Chalfont and Herron, Watters, Marshall and Armstrong that Chalfont and Herron should purchase the property as trustees for them all, in certain specified proportions, for $155,162.50.  A deed was accordingly made, January 1873, and duly recorded, by which Armstrong, Mitchell and Spang conveyed the property to Chalfont and Herron, who then executed and delivered to the grantors nine separate mortgages, each covering the whole tract, aggregating $143,226.90 payable in six annual installments, to secure the purchase money—this sum, with the interests of Chalfont and Herron, making the entire purchase money.

These mortgages were in amounts representing the different interests of the second parties in the property, and one representing such interest was assigned to each of them.   It was part of the verbal agreement between Chalfont and Herron and the other parties, that the latter were to release their mortgages on the property, pay the balance of the purchase money due by them, in six installments and when that was paid, receive deeds from Chalfont and Herron for their respective interests.

Among others one of the bonds and mortgages was assigned to Marshall; and also one of them, for $11,935.56, to Watters.

At Watters' death his mortgage had not been satisfied, but with the bond accompanying it, was in the hands of Chalfont and Herron.   With this exception, and the exception of one small payment due on another mortgage they were all satisfied of record.

After his death, on May 19th 1882, his administrator issued a sci. fa. on this mortgage, to which Chalfont and Herron filed an affidavit of defence, setting up the above facts, and averring that they were willing on the payment of the balance of the purchase money and the satisfaction of the mortgage, to convey to Watter's legal representatives, the decedent's interest in the property.

Watters in his life-time paid four installments on the purchase money.

Chalfont and Herron averred at the hearing, that after deducting these payments, and the amount of the decedent's mortgage, there was still due for his share of the coal lands, including interest $8,193.77; and as part payment of this they demanded the balance of $4,721.46 in the hands of the administrator for distribution.

The principal witness for the claimants was Robert Marshall to whose testimony counsel for the next of kin excepted on the ground that he was an interested and incompetent witness under the Act of 1869; and they further insisted, that under the facts as found by the court, the claim of Chalfont and Herron was founded on a parol agreement which could not be enforced under the statute of frauds.

The court below delivered the following opinion :

" The claim of Chalfont and Herron, being for the purchase money of real estate, and being founded on a verbal contract, under the statute of frauds, cannot be allowed, unless there was a resulting trust in favor of the decedent. An examination of the authorities shows that this is raised in two ways.

(1) When the title is taken in the name of one person while the purchase money is paid, when the title is acquired, in whole or in part by another, there is a resulting trust in favor of the latter: Edwards v. Edwards, 3 Wr. 369; Bennet v. Dougherty, 32 Pa. St. 371.

(2) When one having an interest in land is induced to confide in the verbal promise of another that he will purchase it for the benefit of the former, and in consequence the other is allowed to obtain the legal title, his denial of confidence is such a fraud as will make him a trustee ex maleficio : Woolford v. Harrington, 74 Pa. St. 311 and 86 Pa. St. 89.

By the terms of the purchase of this property there was no cash to be paid at the time the deed was delivered. But under the verbal agreement between Chalfont and Herron and the parties for whom they purchased the mortgages, received by them for their interests were to be released. The release of the mortgages held by them would reduce the amount of the purchase money due on the whole property by their amount, and would be a payment of that much of the purchase money.

The legal effect of this agreement, was that the mortgage of the decedent was applied to this payment pro tanto of the purchase money of his interest in the property, at the time the title was acquired by Chalfont and Herron. It is true the mortgage assigned to the decedent was not satisfied on the record, but it and the accompanying bond are in the possession of Chalfont and Herron, the mortgagor. And whilst there is no direct evidence that they were delivered to them by him, there can be no hesitation in coming to the conclusion from all the circumstances of the case, that the decedent surrendered them as evidence of their payment. And as the mortgage under the agreement was paid and should have been satisfied, the fact that it was not is not material. Equity will consider that as done which ought to be done.

This case then seems to fall within the first class of resulting trusts.

It would appear also, to be within the second class.

The decedent had an interest in this property at the time Chalfant and Herron purchased it. He was induced to rely on their promises made before the purchase by them, that they would purchase for his benefit. Can there be any doubt, that if they denied the confidence they would be held to be trustees, ex maleficio.

Then as Chalfont and Herron are bound by the contract, it must be mutually binding, and it can be enforced against the decedent's legal representatives.

It was contended by counsel for the next of kin, that the evidence of Robert Marshall, the principal witness for the claimants, should be excluded, on the ground that he was an interested party and therefore incompetent as a witness. Chalfont and Herron had conveyed to him by deed with special covenant against incumbrances an undivided eighth of the property. As the mortgage assigned to the decedent covered the whole of this property, it may be, under the authority of Kinson *v.* Keck, 8 W. & S. 16, that he was incompetent as a witness, and that his testimony should be excluded, had objection been made to his examination on that ground in time.

This cause came on for hearing first on the 25th day of June 1880, when counsel for the claimants made a full statement of the facts of the case. At the instance of counsel for next of kin, the hearing was continued to give time to investigate the claim. It came on again on the 17th of April 1882, and Robert Marshall was the first witness called and examined by the claimants, and was cross-examined by counsel for next of kin. The only objection then made was to the competency of his evidence. Mr. Marshall was again examined on the 19th of July, 1882, without objections being made to his competency,

and on that day after the claimants closed their case, the first objections were made to his competency as a witness. The next of kin knew, or could have known by the exercise of ordinary diligence, at the time Mr. Marshall was examined as a witness, the facts which it was claimed rendered him incompetent. This being the case, the objection was not made in time, and the exclusion of his evidence, is discretionary with the court: Robinson v. Snyder, 25 Pa. St. 203 ; Greenleaf's Evidence, § 421. If there was any conflict of testimony or any doubts as to the truth of his evidence, it should perhaps be excluded. It is uncontradicted and fully corroborated, and as its exclusion might defeat a just claim, it should not be stricken out.

In accordance with this opinion the court entered a decree directing the balance in the hands of the administrator to be paid to the claimants, whereupon the next of kin took this appeal, assigning for error the admission of Marshall's testimony, and the finding by the court of the above agreement " in this testimony and upon the affidavits of defence ;" also the finding that there was a resulting trust in favor of the decedent ; and the decree of the court.

*Thomas C. Lazear* and *T. Walter Day*, for appellants.— It is plain from his knowledge of them that the judge considered the affidavit of defence ; whereas it was inadmissible and the court had previously rejected it when offered in evidence. Marshall was an incompetent witness, under the Act of 1869, because he was interested in the property. Had his evidence been objected to at his examination, it is conceded that it would not have been admitted ; it ought, then, to have been excluded later when objection was made to him. The heirs could not know until after his examination, that he had an interest in the property : Struthers v. Willards, 19 Pick. 202 ; Veith v. Hogge, 8 Iowa 163 ; Lewis v. Morse, 20 Conn. 211 ; Jacobs v. Layburn, 11 M. & W. 685 ; Armstrong v. Graham, 4 Barr 142. Since the Act of April 22d 1856, Statute of Frauds, parol evidence cannot establish a trust in lands, and by the proviso of said Act, a resulting trust is raised only by fraud or misconduct on the part of those who acquire the legal title, toward him who furnishes the purchase-money. Under this proviso Watter's legal representatives are the only ones who could offer parol evidence to establish a resulting trust. The remedy of Chalfont and Herron, therefore, was an action for breach of parol contract, in the court of Common Pleas : Meason v. Kaine, 63 Pa. St. 335 ; Id. v. Id., 67 Pa. St. 126; Dumars v. Miller, 34 Pa. St. 319 ; Hertzog v. Id., 3 Pa. St. 418. A resulting trust in the property of the heirs does not exist in this case, because no money was paid at or before the execution of the mortgage :

Barnet *v.* Dougherty, 8. Cas. 371; Nixon's Appeal, 63 Pa. St. 279. There was no resulting trust ex maleficio because there was no denial of. the verbal agreement on the part of Chalfont and Herron.

*W. W. Thomson* and *Wm. L. Chalfont,* for appellees.—The court had evidence enough to justify its findings without considering the affidavits of defence and no weight was given them. The court has exclusive jurisdiction in this case : Whitesides *v.* Whitesides, 8 Harris 474; Ashford *v.* Ewing, 1 Cas. 215; Bull's Appeal, 12 Harris 288 ; Otterson *v.* Gallagher, 7 Nor. 357 ; Lex's Appeal, 1 Out. 292; Dundas' Appeal, 23 Sm. 479. If Marshall was an incompetent.witness, the appellants might have known the facts that showed it, previous to his examination, as they were matters of public record. He was not, however, incompetent on the ground of interest, because Watter's mortgage, although it covered the whole property, of which Marshall owned an eighth, was in effect paid, although unsatisfied ; and Marshall was therefore relieved from any liability for it : 2 Jones on Mortgages, § 913. The transactions out of which a resulting trust arises may be proved by parol evidence : Perry on Trusts, § 137; Lloyd *v.* Carter, 5 Harris 216 ; Peoples *v.* Reading, 8 S. & R. 484 ; Lynch *v.* Cox, 11 Harris 269. There was a trust ex maleficio, although not by fraud in any of the parties. But as Chalfont and Herron were bound to fulfill their part of the contract, or on their failure become trustees ex maleficio ; the next of kin were also bound to fulfill their part.

The opinion of the court was delivered by SHARSWOOD; C. J., December 30th 1882.

The affidavits of defence of Chalfont and Herron to the scire facias on the Watters' mortgage were rejected by the learned judge when offered in evidence, and we cannot assume that they were considered by him. The statement of them in the opinion rightly interpreted is only as to the nature of their claim. There was sufficient to support them in the testimony of Robert Marshall. The main contention here has been as to the competency of this witness and the competency of his evidence. The learned judge below appeared to think that he was interested, and Watters being dead, was not a witness under the Act of 1869, but thought that the objection came too late. It is not necessary to consider whether he was right in this, for we all think that Robert Marshall was a competent witness. He was directly interested in the question ; but that is not enough, he must be directly interested in the case before the court. It is clear that he could neither gain nor lose by any decision on

by any decision on the claim of Chalfant and Herron, and it is equally clear that the record of their proceeding could not be given in evidence for or against him. Had this been a scire facias to foreclose the mortgage he could not be a witness being one of the terre-tenants of the land. That is all that was decided in Kuester *v.* Keck, 8 W. & S. 16, referred to by the learned judge below in his opinion. Marshall's evidence was relevant and competent, whether sufficient to establish a resulting trust or not. The Orphans' Court in the settlement and distribution of the estates of decedents has undoubted jurisdiction to decide upon the claims of creditors. It is true if there was no valid trust their claim could only be for damages for breach of contract, and not for the balance of the purchase-money of the land. But we think there was enough here to show a valid trust within the decisions which have been made under the statute of frauds. That statute is a shield against fraud, not a weapon to make it effectual. Certainly the claimant could not set up that they were trustees ex maleficio as against their cestui que trust. But suppose the parol agreement had been in writing, can it be doubted that they could have claimed the balance of the purchase-money? To say, that while the cestui que trust could insist on the specific performance of the contract, the trustee could not, would not be to hold the scales of justice even. We think that by the surrender of the bonds and mortgage to the mortgagors held and produced by the claimants, and the evidence of the payment of a considerable sum by Watters on account of the purchase-money, the contract was so far executed that it would be unjust and inequitable not to carry it into full effect.

Decree affirmed, and appeal dismissed at the costs of the appellants.