## Carnell's Estate

The facts appear from the adjudication of

STEARNE, J., auditing judge.—Decedent died on January 12, 1915. By her will she gave her residuary estate to the Fidelity Trust (Insurance) and Safe Deposit Company of Philadelphia (now Fidelity-Philadelphia Trust Company) in trust, the net income therefrom to be paid to her daughter, Althea J. Carnell, for her sole and separate use for life, with remainder upon her death to the Baptist Orphanage of Philadelphia for certain purposes. By codicil to her will testatrix changed the gift in favor of the daughter so that she (the daughter) might in her discretion "sell any part or parcel of the residue and remainder of (the) estate bequeathed and devised in trust for her and change the investments or any of them included in said residue and use and appropriate such of the proceeds thereof as she may deem necessary without any accountability to any person or persons whatsoever". Also by said codicil the gift in remainder to the Baptist Orphanage of Philadelphia was revoked, and in lieu thereof the remainder, "or so much thereof as may re-

main immediately after the decease" of said daughter, was given one sixth to the Board of Home Missions of the Presbyterian Church in the United States of America; one sixth to the Board of Foreign Missions of said Church; one third to the board of home missions of said church "for use in Alaska"; and one third to the board of foreign missions of the same church "with special attention to be given to African Missions." Also by said codicil testatrix revoked the appointment of Fidelity Insurance Trust and Safe Deposit Company as executor, and in lieu thereof appointed her said daughter, Althea J. Carnell, sole executrix "with the same power and duties as are conferred and imposed upon said trust company, etc."

The present account is apparently the first ever filed in this estate, and the reason for it now is that Althea J. Carnell, daughter of decedent, died on July 16, 1939, thereby raising certain questions for adjudication.

The present accounting is had because of demand made by the Boards of Home and Foreign Missions of the Presbyterian Church in the United States of America, who, it is alleged, would be entitled to distribution of principal under the will of this decedent if any such principal remained susceptible of distribution. According to a statement contained in the account of Althea J. Carnell, decedent's daughter was trustee for herself, but at the time of her death there remained no property distinctly traceable to the estate of Amanda Carnell, except certain real estate which had been conveyed by the daughter, Althea J. Carnell, to a third party, and then reconveyed to her in her lifetime. Said boards of home and foreign missions are claiming that such real estate remains as assets of the estate of Amanda Carnell, and passes under her will to them. They demand possession thereof, and likewise payment to them of the rents accounted for issuing out of the same.

The real estate in question, as shown by the account, is as follows: Premises 2263 and 2265 North Gratz Street; 1901 North Seventh Street (being a series of

small garages identified as at Seventh and Berks Streets) ; and ground rents issuing out of 3959 Germantown Avenue and 1242 South Seventeenth Street, all in the City of Philadelphia. Rents from all these properties, except 1242 South Seventeenth Street, are included in the accounting.

Althea J. Carnell, in her will, devised premises 1907 North Seventh Street, Philadelphia, and all ground at the Northeast corner of Seventh and Berks Streets (the garage properties noted above), to Temple University absolutely, and expressed a desire that same be used as a dormitory to be named "Carnell Dormitory." Temple University now claims the property mentioned by devise under the will of Althea J. Carnell. Tradesmens National Bank & Trust Company, executor of and trustee under the will of Althea J. Carnell, deceased, claims all the property accounted for and the income therefrom, with the exception of that claimed by Temple University as aforesaid, as passing to it under and by virtue of the will of said Althea J. Carnell.

All of the facts are admitted, and made the basis of a stipulation signed by counsel for the various contending parties. It is stipulated that Amanda Carnell, then a widow, by deed dated May 27, 1895, and duly recorded, conveyed all of the properties and ground rents noted above to Althea J. Carnell, her daughter, in trust to permit Amanda Carnell to occupy and receive the rents, etc., for life, and immediately after her death "to take charge of, sell and dispose of the estate and premises herein granted and assigned and conveyed according to the provisions made in the last will and testament of said Amanda Carnell." It is also stipulated that Althea J. Carnell, then a single woman, by deed dated December 15, 1921 (after the death of her mother), conveyed all of the properties and ground rents in question to one Bayard L. Buckley, a single man; and he, by deed dated December 23, 1921, conveyed them to one Sara T. Hall, a single woman; who, by deed dated January 18, 1924, in turn conveyed them back to Althea J. Carnell, the original

grantor. These conveyances were all recorded, and the consideration in each instance was nominal. Also it is stipulated by counsel that Althea J. Carnell, by deed dated January 30, 1925, and duly recorded, conveyed all of the properties and ground rents, except the northeast corner of Seventh and Berks Streets, to Sara T. Hall for a consideration of $10,850 as set forth in the deed, and, by deed dated September 14, 1934, and duly recorded, Sara T. Hall reconveyed to Althea J. Carnell. On October 27, 1921, Althea J. Carnell applied for and was granted as owner a permit by the City of Philadelphia to construct a row of garages, 18 in number, on the lot situate at the northeast corner of Seventh and Berks Streets.

With all of the foregoing facts before me I am asked to decide, as a matter of law, who has title to the real estate noted in the account, and who is entitled to the balance of rents shown.

Parenthetically it is to be noted that the first and final account of Tradesmens National Bank & Trust Company, executor of the will of Althea J. Carnell, deceased, came before me and was audited on May 6, 1940. My adjudication in that matter will be filed simultaneously herewith. See Orphans' Court no. 3291 of 1940.

Ordinarily, the real estate here involved, being unconverted, could not be made the subject of an award by adjudication, for it has been well settled that the orphans' court has no jurisdiction to construe a will and declare the rights of parties in unconverted real estate: Hazard's Estate, 253 Pa. 447, Potter's Estate, 4 Dist. R. 329, Clark's Estate, 26 Dist. R. 1046, Bunnell's Estate (No.2), 28 Dist. R. 545, and Krull's Estate, 6 D. & C. 21. It may be, however, that an award of the rents accounted for would have the effect of fixing the title to the real estate out of which they issued. The present case is somewhat different from those cited. Here I have before me two sets of claimants to the title in dispute, each claiming through a different will, and I also have before me the two estates through which title is claimed. Under such circumstances,

with all parties represented on the record, it would seem that the disputed title may be settled by adjudication. As authority for this, Tyson's Estate, 191 Pa. 218, is cited. In that case the property in controversy admittedly had been Charles Tyson's. At his death it passed into the possession of his widow, Mary, under his will. At her death her executors took possession of it as part of her estate, and appellant claimed it as part of Charles Tyson's estate. The court there said (p. 223):

"The title to it depends on the will of Charles Tyson, and both parties are in the orphans' court for supervision and control of their management of their respective trusts under his will and hers. It is a case for the jurisdiction of the orphans' court, and such was the decision when the case was here last year: Tyson v. Rittenhouse, 186 Pa. 137."

It was also stated:

"While ejectment for the real estate as such is the remedy in ordinary cases for heirs or devisees, yet in the present case the executors are, charged by the will of Charles Tyson with the administration of his real estate, as well as his personalty, and the jurisdiction of the orphans' court to assist executors and administrators in obtaining possession and control of the decedent's assets is very extensive [citing cases]."

Also it was said (p. 224):

". . . here it is admitted that the property was Charles Tyson's, but it is claimed that it passed to his widow under his will. As already said both estates are in the orphans' court, and that is the tribunal to settle this title."

Under this authority I shall decide, as a matter of law, who has title to the properties and ground rents noted in the account before me.

As noted heretofore, testatrix in her will set up a trust over her residuary estate, the rents, issues, and profits thereof to be paid to her daughter, Althea J. Carnell, for her sole and separate use for life, with remainder to the Baptist Orphanage of Philadelphia. Under the codicil to

her will, executed about 12 years later, in 1894, she provided as follows:

"I desire to change and modify the bequest and devise in favor of my daughter, Althea J. Carnell, so that she may, in her discretion, sell any part or parcel of the residue and remainder of my estate bequeathed and devised in trust for her and change the investments or any of them included in said residue and use and appropriate such of the proceeds thereof as she may deem necessary without any accountability to any person or persons whatsoever."

"I hereby revoke the bequest to the Baptist Orphanage and in place and stead thereof, I give, devise and bequeath the residue and remainder of my estate which has been bequeathed and devised to my daughter, Althea J. Carnell, for life, or so much thereof as may remain immediately after the decease of said Althea J. Carnell, as follows: [fractional shares to the Boards of Home and Foreign Missions of the Presbyterian Church]."

The language quoted clearly expresses the intention of testatrix, and I have no difficulty in construing it to my own satisfaction. The right given the daughter to "use and appropriate such of the proceeds thereof as she may deem necessary without accountability to any person or persons whatsoever" is the equivalent of a right to consume, and certainly is not broad enough to permit her to divert the unconsumed remainder into channels other than those prescribed by the will of her mother, the testatrix. True, the daughter did, by devious means, attempt to "appropriate" the properties in question by making conveyances and reconveyances in her lifetime, but the fact remains that at the time of her death the properties still retained their original identity and must therefore now be considered the unconsumed portion of the residuary estate of Amanda Carnell. As such, the Boards of Home and Foreign Missions of the Presbyterian Church own the title by operation of law.

No case to the contrary has been cited by counsel in their briefs, and I have been unable to find any. Tyson's Estate, supra, and Fassitt v. Seip, 240 Pa. 406, are of sufficient weight to warrant my finding as above. In Tyson's Estate the questioned will read, in part, as follows (p. 220) :

" '(a) In case I should depart this life before my wife Mary I give and bequeath unto her the whole of my estate Real and Personal and to have the same and use it at pleasure for her sole use as fully largely and amply to all intents and purposes as I myself could or might have done in my Lifetime with full power at any time to sell or dispose of any part or the whole of the same . . .".

The wife survived testator by some 11 years, and disposed of all her property by will giving to her executors authority to sell her real estate " 'including all the real and personal estate late of my [her] deceased husband, Charles Tyson, and which he devised and bequeathed to me [her] absolutely under the terms of his last will and testament.' "

The real estate there in dispute had been conveyed by her in her lifetime to her brother and by him conveyed back to her, so that at the time of her death title was in her name. It was held that she had no power to dispose of it by will. The following apt expression appears at the end of the opinion in that case (p. 228) :

"The test in all such cases is the good faith of the action of the beneficiary. If it is an honest exercise of the discretion with which the testator has clothed him his action is conclusive, but he cannot be permitted to make use of the mere form to defeat or evade the true intent and pervert the gift to a different purpose."

In Fassitt v. Seip, supra, testator by will provided (p. 409) : " 'All the residue and remainder of My Estate, Real, personal and mixed . . . I give, devise, and bequeath Unto my said wife . . . to have Use, and enjoy the Same, in like manner as I myself Could do if living.' "

In the following clause he provided: " 'Whatever of my Said estate, that may remain Unexpended after the decease of My Said wife, I direct to be divided into two equal parts or shares' ". One of such shares he gave to a son for life with remainder to his children, and the other share to his daughter. It was held that the gift to the wife was a life estate only with power of consumption, and that she could not by will dispose of any estate derived under her husband's will remaining at her death. It was also held that the situation was not altered in any way by the fact that during her lifetime the wife had made conveyances to third parties who immediately reconveyed to her. The following quotation from the opinion in that case might be held to apply with equal force to the facts involved in the case presently under consideration (p. 411) :

"He [testator] intended that his wife should have every use and enjoyment of his residuary estate that he himself had while living. If necessary for her comfort and maintenance she could have consumed and expended all of it, and for these purposes could have conveyed a fee simple title to a bona fide purchaser. But this she did not do. She died in possession of the properties and undertook to dispose of them by her will. We, therefore, agree with the conclusion reached by the learned court below that the properties in question are a part of the unexpended remainder of the estate of her husband and passed under his will to the devisees named therein. Not having consumed the residuary estate of her husband in her lifetime the wife could not dispose of it by will. These conclusions find ample support in the following cases: Henninger v. Henninger, 202 Pa. 207; Kennedy v. Pittsburgh, Etc., R. R. Co., 216 Pa. 575; Allen v. Hirlinger, 219 Pa. 56; Briggs v. Caldwell, 236 Pa. 369."

Also, what was said in Tyson's Estate, supra, and repeated as good authority in Fassitt v. Seip, is applicable here (p. 226) :

"The extent of the widow's consumption of the estate was within her own control. Her decision was without appeal, but it must have been honestly reached in accordance with the purpose the testator intended, and not merely colorably to defeat his will. She had power to carry out his intentions by sale, transfer and consumption of the proceeds in such a way as to leave nothing at her death. But a transfer with intent not to consume for herself, but to preserve for others after her death, and to change the beneficiaries after her from those chosen by her husband to others of her own selection would be a fraud on the testator and his will."

In addition to the weight of authority cited and quoted above, the language of the will before me appears to leave little doubt as to testatrix's intention to confer merely a life estate with power to consume. The daughter was authorized to "use and appropriate such of the proceeds thereof as she might deem necessary." In ordinary usage the word "proceeds" means cash realized from a sale of the property—it certainly does not mean the property itself. I cannot attribute to the word "appropriate" any broader meaning than to consume, or use. My conclusion is that the will gave the daughter power to consume or use the proceeds of sale of the real estate as she might deem necessary. Sale of the real estate must mean an honest, bona fide sale for cash or other equivalent valuable consideration, not a mere transfer and retransfer in order to place title in the beneficiary. There having been no such bona fide sale, and no consumption or appropriation of the proceeds, the real estate as such now remains unconsumed and title passes to the parties entitled to the remainder under the will of decedent. An award hereunder of the rents accounted for will be made in accordance with this finding. . . .

*Carlyle H. Ross*, for exceptants.

*Chapman & Hamilton*, contra.

*Russell Conwell Cooney*, for Temple University.

BOLGER, J., September 18, 1940.—Exceptants urge that the word "appropriate", being defined as "set apart or applied to a particular purpose", comprehends the realty as well as the proceeds thereof—the realty being the only traceable assets now before us. We are all satisfied that the auditing judge properly construed the word in the connection testatrix's phraseology intended it should be employed, namely, with the words solely of which it is an integral part, "such of the proceeds." There is nothing in the will encouraging a different construction. The authorities cited in the adjudication are apt and controlling.

Mercur's Estate, 151 Pa. 49, cited by counsel for Temple University, is readily distinguished. There the court found there was no unexpended residue.

The exceptions are dismissed and the adjudication confirmed absolutely.