186    137
191    223

</div>

Jacob Tyson, Sole Surviving Executor of the last Will and Testament of Charles Tyson, Deceased, Appellant, *v.* Henry Rittenhouse and Josiah R. Bechtel, Executors of the last Will and Testament of Mary Tyson, Frank Evans et al., Trustees of the Charles Tyson Cemetery, David Rittenhouse, Martin Rittenhouse, Jacob Rittenhouse, William Rittenhouse, Susan Hunsicker, Elizabeth Detweiler, Ann Evans and Rachel Hunsicker.

*Jurisdiction—Common pleas—Orphans' court—Decedents' estates—Executors and administrators—Distribution.*

The court of common pleas has no jurisdiction of a bill in equity filed by the executor of a husband against the executor of a wife, where it appears that both estates are in process of settlement in the orphans' court, and the matter in controversy is the title of property in process of distribution. In such a case the orphans' court has exclusive jurisdiction, not only to distribute the property, but also to restrain by injunction any action by either of the litigants, which would cause irreparable damage to the other.

Argued Feb. 2, 1898. Appeal, No. 411, Jan T., 1897, by plaintiff, from decree of C. P. Montgomery Co., June T., 1897, No. 4, dismissing bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction to restrain defendants from transferring property, and compelling a reconveyance, and for an account.

Defendants demurred, alleging jurisdiction in the orphans' court, and denying jurisdiction in the court of common pleas.

SWARTZ, P. J., filed the following opinion:

Charles Tyson died on July 5, 1886. His surviving execu-

tor, Jacob Tyson, the plaintiff, contends that the widow, Mary
Tyson, took but a life estate under the will of her husband,
Charles Tyson.

Mary Tyson, the widow, died on June 6, 1897. She claimed
that under her husband's will she took an absolute estate in all
his real and personal property, and by her will she disposes of
all her estate including the personal property and estate which
her husband devised and bequeathed to her absolutely.

The plaintiff by his bill seeks to recover from the executors
of Mary Tyson the possession of all the estate which passed into
her control under the will of Charles Tyson.

1. The will of Charles Tyson with its codicils reads as follows:

" Be it remembered that I Charles Tyson of Limerick Township,
Montgomery County and State of Pennsylvania, being of sound
disposing mind, memory and understanding, knowing the uncer-
tainty of this Life and to the end that I may be the better pre-
pared to Leave this World, do theirfore make, publish and
declare this to be my Last will and testament in manner and
form as follows to-wit:

" First I order and direct that all my just debts of whatsoever
nature and my funeral expenses be fully paid and satisfied as
soon as conveniently can be after my decease and after payment
of my just debts and expenses as aforesaid I order and direct as
follows:

" In case I should depart this Life before my wife Mary I give
and bequeath unto her the whole of my estate Real and Per-
sonal and to have the same and use it at pleasure for her sole
use as fully largely and amply to all intents and purposes as I
myself could or might have done in my Lifetime with full power
at any time to sell or dispose of any part or the whole of the
same and also power and authority to collect all outstanding
monies of whatsoever nature or kind and to be exclusively for her
use and disposal and also for the selling of any personal prop-
erty or transfering of any stock of whatsoever nature or kind,
and to do all and whatsoever may be necessary to be done in
the selling and transfering of any stock or personal property
and to vest full title thereof in the purchaser or purchasers.

" If my wife Mary should think at any time that it would be
to her advantage to sell any part or the whole of my Real estate
during her nateural Lifetime, she can do so, either at public or
private sale and make and execute good and lawful deed or

deeds of conveyance to the purchaser or purchasers thereof, to be as valued good and as effectual in Law as if I had made and executed the same in my Lifetime and to vest full title in the purchaser or purchasers thereof and my wife Mary shall have the proceeds of such sale at her own disposuel.

" Their shall be no desposal made of my estate or any part thereof by my executors hereinafter named during the Lifetime of my wife Mary. The management controle and proceeds theirof shall be reserved for and to the sole use of my wife Mary during her natueral Lifetime—after the decease of both me and my wife Mary I order my executors hereinafter named or the survivors of them to sell my personal property if any shall remain and also to cell my Real estate if any shall remain either at public or private sale—vesting in them full power and authority to execute and deliver good and Lawful deed or deeds, to the purchaser or purchasers thereof, to vest full title in the purchasers theirof and to be as good and effectuael in Law as if I myself had made and executed the same in my Lifetime, and after payment of my just debts and expenses as aforesaid I order and direct that one equal one half of my estate shall be divided among my Brothers and sisters share and share alike, one equal one half of my estate shall be devided among my wife Mary Brothers and sisters share and share alike.

" In case any of my Brothers or sisters or of my wife Mary's Brothers or sisters should be deceased at the time of making said distribution and having Left issue such distrebutive share shall be devided among such issue.   share and share alike.

" Lastelly I hereby nominate constitute and appoint my Brother-in-law Henry R. Rittenhouse and my Brother Jacob Tyson, Executors of this my Last will and testament giving and granting unto them full power and authority to carry out the same as executors according to the tenure theirof.

" In Witness whereof I, the said testator have hereunto set my hand and seal the sixteenth day of November in the year of our Lord one thousand eight hundred and seventy-two.

" signed sealed and Published in our Presents and at his request have hereunto subscribed our names as witness.

" (Signed) THOMAS J. EVANS.
" (Signed) SAMUEL LOUCKS.

" (Signed)
"CHAS. TYSON, (Seal.)"

## "FIRST CODICIL.

"I, Charles Tyson, of Limerick Township, Montgomery County and state of Pennsylvania, do make and publish this codicil to my Last will dated the sixteenth day of November, A. D. 1872, I give and bequeath to the Trustees named in a deed dated the fifth day of January A. D. 1874 Recorded at Norristown in deed Book No. 219 Page 287 by myself and wife to H. R. Rittenhouse, Martin Rittenhouse, Francis Peterman, Isaac Y. Linderman and Thomas J. Evans, Trustees for the time being and their successors in office Two thousand dollars after the death of my wife Mary for the use and purpose of erecting a building on the cemetery lot mentioned in said deed suitable for occasions at funerals as are commonly used at such places on such occasions and under the by-laws restriction rules and regulations therein set fourth, free for those who bury there forever. But never for any one sect or denomination to the exclusion of others nor against the opinion or belief of the doner thereof. and also I give and bequeath unto the above named Trustees or their successors in office one thousand dollars after the death of my wife Mary. In trust forever to be secured in unincumbered Real estate by Judgment or Mortgage of safe value or Bonds of the United States or the state of Pennsylvania. The interest thereof is to be paid annually to the Treasurer of said Semetery so appointed and if not used again to be placed at interest and when necessary and as often as necessary said interest only is to be used for repairing fencing and keeping said building and Semetary in order and repairs any person appointed by the Trustees hereof to take charge of the above funds shall use the same contrary to the above uses or his own use shall be held and guilty of a misdemener in Law and fact —If any one of my heirs at Law or legatees should attempt in case my death should occur within the period fixed by Law annuling bequeaths of this kind they shall not receive said bequeaths but it shall be devided among the other Legatees not objecting and a receipt from any one authorized by the trustees to receive the same shall be a sufficient discharge to my executors.

" In witness I Charles Tyson the testator have hereunto set my hand and seal to this codicel as and for part of my last will and testament the thirteenth day of March in the year of our Lord one thousand eight hundred and seventy-five 1875.

## "SECOND CODICIL.

"I Charles Tyson, of Limerick township, in the county of Montgomery, in the state of Penna., Do make and publish this codicil in my last will dated the sixteenth day of November, A. D., 1872.

"My will is and I order and direct that a trustee be appointed to take charge of my wife Mary's sister, Susanna, now widow and relict of Henry Z. Hunsicker, deceased, share or bequest named in my will during her natural lifetime and pay her annually the interest thereof, and at the time of her decease the said share and any interest due thereon shall be paid and revert back to said Susanna's brothers and sisters or their legal representatives as in will directed, but not go and descend to said Susanna's heirs.

"In witness whereof I, Charles Tyson, testator, have hereunto set my hand and seal to this codicil as and for part of my last will and testament the twelfth day of November, A. D., one thousand eight hundred and seventy-seven (1877.)

## "THIRD CODICIL.

"I, Charles Tyson, testator, within named, do make and publish the following codicil to be added to and be part of my last will and testament as follows, to wit: Whereas in my last will and testament bearing date November the sixteenth, A. D., 1872, I had made and appointed my brother-in-law, Henry R. Rittenhouse, and my brother, Jacob Tyson, executors of my estate. And whereas said Henry R. Rittenhouse is now deceased, I do, therefore appoint and depute in his stead my brother-in-law, Abraham Hunsicker, Jr., together with said Jacob Tyson to be the executors of this, my last will and testament, with full power and authority to execute the same according to the tenure thereof.

"In witness whereof, I, Charles Tyson, the testator, hereunto set my hand and seal to this codicil as and for part of my last will and testament the fourth day of November, A. D., 1879."

2. In 1886 the executors of Charles Tyson assigned, transferred and set over unto Mary Tyson all the personal estate of the testator, consisting of five Perkiomen Railroad bonds, thirty-four shares of Spring City Bank stock, farming implements and cash, aggregating in all as appraised $5,982.11. At the same

time the widow gave a receipt to the executors setting forth that she was to have, to hold and enjoy the property, according to the terms and provisions of the will.

3. In 1887 the widow sold one of the tracts of real estate to Harrison Bean and received as a consideration $1,015.

4. In March, 1897, she sold the remaining real estate to her brother James Rittenhouse, receiving as a consideration $2,500 cash, and mortgages on the premises sold, aggregating $11,500. In April, 1897, the properties were reconveyed by the brother to the widow, Mary Tyson. The consideration named was the same as that stated in the deeds to the brother. The mortgages remain unsatisfied of record.

5. At the time of Mary Tyson's death the railroad bonds and shares of bank stock still stood in her name.

6. The defendants demur to this bill and assign as causes for their demurrer, that the plaintiff has no interest in the matters alleged, that the defendants are not in any way liable to the plaintiff, that the equity court has no jurisdiction of the bill.

## LEGAL CONCLUSION.

We are of opinion that the orphans' court has exclusive jurisdiction of the matter alleged in the bill. The whole controversy arises over the interpretation of the will of Charles Tyson. The estate of the testator is before the orphans' court, the surviving executor is endeavoring to administer it, and the construction of the will is specially entrusted to the orphans' court. The rival claimants to the property in dispute are also in the orphans' court. The court has control over the executors of Mary Tyson as well as over the surviving executor of Charles Tyson. Why seek the aid of another court when the parties and subject-matter are peculiarly within the control of the orphans' court? Whether these bonds, stocks and lands belong to the estate of Charles Tyson can be determined by the orphans' court. The orphans' court alone has the authority to ascertain the amount of a decedent's property and order its distribution among those entitled to it: Phillips, Administrator, v. Railroad Co., 107 Pa. 465. This property belongs to the husband's estate or to the widow's estate and both estates are in process of settlement in the orphans' court and all matters arising in the distribution must come under the jurisdiction of the orphans' court.

It is contended that the equity court should intervene to restrain the executors of Mary Tyson from diverting the property to the irreparable loss of the estate of Charles Tyson. But we must not forget that the orphans' court has power to prevent, by order in the nature of writs of injunction, acts contrary to law or equity, prejudicial to property over which it has jurisdiction: Appeal of Miskimins, 114 Pa. 530. Again, " The authority of the orphans' court is plenary, embracing as it does all the powers of a court of chancery, .... and if need be, can enforce its mandates by proceedings for contempt: " Lafferty v. Corcoran, 180 Pa. 314. After a careful consideration of the prayer of the bill, we find that the sole question is one of settlement or administration in the orphans' court. It is now the settled law, that the orphans' court has exclusive jurisdiction over all things pertaining to the settlement and distribution of estates: Linscnbigler v. Gourley, 56 Pa. 166. No matter of settlement or touching the administration of an estate can be drawn within the power of the common pleas: Campbell's Appeal, 80 Pa. 298. The orphans' court, in a proceeding to distribute an estate among legatees, next of kin and heirs, has ample power to inquire into and determine all questions standing directly in the way of a distribution to these parties: Dundas's Estate, 73 Pa. 480. The executors of Mary Tyson are under the control of the orphans' court. If they interfere prejudicially with the property belonging to the estate of Charles Tyson they may be restrained, and the court has power to enforce its mandates. There are no facts in dispute as the case now presents itself; the sole inquiry is, what estate did Mrs. Tyson take under her husband's will? When the orphans' court is called upon to decide this inquiry, its final decree must end all controversy. If we send this case into the equity court, we do so for the sole purpose of having that court interpret the will of Charles Tyson. The orphans' court alone must attend to this matter. Her grasp is already laid upon the will, and there is no authority that can wrest it from her hands.

And now, November 1, 1897, the demurrer to jurisdiction is sustained and the bill is dismissed at the cost of the plaintiff.

*Error assigned* was in sustaining the demurrer.

*N. H. Larzelere*, with him *Wm. F. Dannehower*, for appellant. —The orphans' court has not such equity jurisdiction as to

meet the requirements of this bill: Willard's App., 65 Pa. 267; Ake's App., 74 Pa. 119.

There is no attempt made in this proceeding to settle and distribute either estate. The object for which the remedy is sought is to recover the fraudulently converted property.

Equity will follow a fund through any number of transmutations, and preserve it for the owner so long as it can be identified; no matter in whose name the legal title stands: Farmers & Mechanics' Nat. Bank v. King, 57 Pa. 202; Thompson's App., 22 Pa. 16; Delbert's App., 83 Pa. 473; Abbott v. Reeves, 49 Pa. 494; Campbell's App., 80 Pa. 298; Marschall's Est., 6 Dist. Rep. 386; Trust Co. v. Gazzam, 161 Pa. 536; Beale v. Kline, 183 Pa. 149.

Questions of disputed title are not cognizable in the orphans' court: Curran's Est., 28 W. N. C. 96; Willard's App., 65 Pa. 265; Odd Fellows S. Bank's App., 123 Pa. 356; Fox's App., 11 W. N. C. 236.

The cases cited in the lower court's opinion concern distribution principally, and in none of them was there any dispute over the property to be distributed, as belonging to the estate whose distribution was involved.

*Montgomery Evans*, with him *Louis M. Childs*, for appellees. —The orphans' court has exclusive jurisdiction: Act of June 16, 1836, P. L. 784; Weimer v. Karch, 153 Pa. 385; Hammett's App., 83 Pa. 392; Phillips v. R. R., 107 Pa. 465; Linsenbigler v. Gourley, 56 Pa. 166; Brotzman's App., 119 Pa. 645; George's App., 12 Pa. 260; Loomis v. Loomis, 27 Pa. 233; Miskimins's App., 114 Pa. 530; Dundas's App., 64 Pa. 325; Mussleman's App., 65 Pa. 480; Brooke's App., 102 Pa. 150; Lowry's App., 114 Pa. 219; Johnson's App., 114 Pa. 132; Odd Fellows Savings Bank's App., 123 Pa. 356; Mulholland's Est., 154 Pa. 491; Watts's Est., 158 Pa. 1; Drennan's App., 118 Pa. 176; Hoffner's Est., 161 Pa. 331; Lafferty v. Corcoran, 180 Pa. 309.

PER CURIAM, May 16, 1898:

The question of jurisdiction, presented by this appeal from the decree of the court below sustaining the demurrer and dismissing the bill at plaintiff's costs, appears to have been carefully considered and correctly decided. We have no doubt as

to the correctness of the conclusion reached by the learned pres-
ident of the common pleas, and finding nothing in the record
that requires special notice the decree is affirmed and appeal
dismissed at appellant's costs.