## Slagle's Estate.

Argued May 8, 1939. Before KEPHART, C. J., SCHAFFER, DREW, LINN, STERN and BARNES, JJ.

*H. Montgomery Smith*, with him *William I. Troutman*, for appellant.

*J. Fred Schaffer*, with him *Helen J. Schaffer*, for appellees.

OPINION BY MR. JUSTICE STERN, July 3, 1939:

Notwithstanding the fact that decedent's will was perfectly clear, that the liquidation of his estate involved no complex problems, and that he has now been dead for more than ten years, his estate has constantly been, and still is, embroiled in a mass of litigation, some of it repetitious and unnecessary, but all arising from incompetent administration on the part of the executor.

The principal features of the will were as follows: Testator provided first for the payment of his debts. With the exception of a certain small house and lot and the household furniture, the estate was to be converted into money within three years after his death, and for that purpose the executor was given power to sell all of the realty and personalty. Out of the moneys thus to be realized he bequeathed a number of pecuniary legacies, ranging from $500 to $10,000 each. He devised and bequeathed to Catherine Taylor the house and lot and the household furniture previously referred to. He bequeathed to his executor the sum of $10,000 in trust, to be placed out at interest and the interest paid to Catherine Taylor for and during her life; at

her death the principal of this trust fund was to be divided equally between Pearl Miller, daughter of his sister Ellen Miller, and Betty Slagle, daughter of his nephew Joseph Slagle. He bequeathed to his executor another sum of $10,000 in trust, to be placed out at interest and the interest paid to his brother William F. Slagle for and during his life; at the death of William F. Slagle the principal of this trust fund was to be given to his sister Ellen Miller. The entire residuary estate was devised and bequeathed to Ellen Miller. He appointed M. P. Tierney as executor.

According to the inventory the estate consisted of approximately $100,000 of personal property; there was also real estate valued at $16,000. The debts and the non-trust legacies were paid by the executor in due course, but the trusts in favor of Catherine Taylor and William F. Slagle were not formally set up, and, except for payments to the latter aggregating $970, no interest has been paid to either of the life beneficiaries since decedent's death. In September, 1932, William F. Slagle, who is the present appellant, presented to the court below a petition to compel the filing of an account and the payment of the interest then due on his trust legacy. In pursuance of an order of the court the executor filed a first and partial account in April, 1933. It may be remarked in passing that this account was poorly stated, in that it blended income with principal and distribution with administration. It disclosed that the various non-trust legacies had been paid, but not that any distributive disposition of the residuary estate had been made except that most of the realty had been conveyed to or for the account of the residuary legatee. Exceptions were filed by Ellen Miller to some of the items of the account, and in May, 1933, the court appointed an auditor to take testimony and report upon these exceptions. In September, 1933, the executor died, insolvent, and letters of administration d. b. n., c. t. a. were issued to his widow Eva M. Tierney.

It came to appellant's attention, at some time not disclosed by the evidence, that the executor, before the filing of his account, had, without order or approval of the court and without taking any refunding bonds, not only conveyed some of decedent's real estate to the residuary legatee and her husband, Harry C. Miller, as tenants by the entireties,[1] and some to Pearl Miller, as set forth in the account, but had also assigned personal property, consisting of mortgages, bank stocks and other securities, to Ellen Miller and Pearl Miller, the value of these conveyances and transfers being approximately $46,000. Some of the assignments were made under the guise of sales, but no consideration was actually paid, and the transactions were, in effect, distributions pro tanto of the residuary estate. It also appeared that the result of these transfers and conveyances was that the assets remaining in the hands of the executor to take care of the two trusts were probably of less value than the $20,000 required for that purpose.

In July, 1935, appellant filed a bill in equity in the court of common pleas against the residuary legatee, her husband, her daughter, and the administratrix d. b. n. c. t. a., setting forth that the executor had made these unauthorized distributions without first having established the trusts provided for in the will, and praying for an order directing a return of the property. An answer to the bill was filed denying the jurisdiction of the common pleas on the ground that the cause of action related to matters involved in the settlement of the estate then being administered in the orphans' court. No further action has been taken in the equity proceedings. In March, 1936, by agreement of all parties in interest, the powers of the auditor were extended to an investigation of the assets of the estate and the

---

[1] Ellen A. Miller died in January, 1936, and the title to this real estate is now vested in her husband as survivor.

making of recommendations to the court on matters in dispute. In June, 1936, the auditor, in addition to recommending dismissal of the exceptions that had been filed to the account, recommended that the court should order a return of the property which had been assigned to the residuary legatee and her nominees. The court declined to do this, expressing the opinion that it was without the necessary authority and that the bill in equity was the proper proceeding for the establishment of appellant's rights. Accordingly, on October 8, 1936, it entered an order adjudging that "This court has no jurisdiction, in this proceeding, to decree a reconveyance and reassignment of the property delivered to the residuary legatee by the executor, and for this reason the exceptions [filed to the auditor's report] . . . are sustained, without prejudice to the cestui que trusts to raise the questions embraced therein in a proper proceeding." Two years later, in November, 1938, appellant filed a petition for the review and vacation of this adjudication, being joined therein by the other cestui que trust, Catherine Taylor. A rule to show cause was granted, and an answer was filed by Harry C. Miller and Pearl Miller Clark (nee Pearl Miller) individually and as executrix of the estate of Ellen Miller, deceased. In March, 1939, the court discharged the rule, and from that order the present appeal was taken.

Appellant has mistaken his remedy. A bill of review under section 48 of the Act of June 7, 1917, P. L. 447, is not to be substituted for an appeal where the question at issue has been raised, contested and decided adversely: *Troutman's Estate*, 270 Pa. 310, 320. The statutory period for appeal cannot be enlarged by a bill of review to correct an error of law which might have been the subject of appeal from the original decree: *Bailey's Estate*, 291 Pa. 421, 424. Whatever, therefore, was properly before the court below, and decided by it, cannot be reviewed at this time. But it was *not* decided by the court in its order of October

8, 1936, that *in a proper proceeding* the orphans' court did not have jurisdiction to decree a reconveyance of the property distributed to or for the account of the residuary legatee. It is true that the court, by way of dictum, expressed the opinion that appellant's proper remedy lay in the equity proceedings in the common pleas. In so stating the court was in error. The orphans' court has full jurisdiction and control over property belonging to a decedent's estate and in his possession at the time of his death. The Act of June 7, 1917, P. L. 363, section 9(e), provides that the jurisdiction of the orphans' court shall extend to and embrace "the distribution of the assets and surplusage of the estates of decedents among creditors and others interested," and subsection (n) provides that such jurisdiction shall include "the exercise of all other powers needful to the doing of anything which is or may be hereafter required or permitted to be done in said court, whether incidental to the powers hereinbefore enumerated or in addition thereto." The orphans' court has *exclusive* jurisdiction of the settlement and distribution of decedents' estates: *Appeal of the Odd Fellows Savings Bank*, 123 Pa. 356, 360; *Tyson v. Rittenhouse*, 186 Pa. 137, 143; *Link's Estate (No. 1)*, 319 Pa. 513, 516. Within the orbit of its jurisdiction it has all the powers of a court of chancery: *Appeal of the Odd Fellows Savings Bank*, supra. Its power to distribute necessarily includes the power to determine all questions essential to a proper distribution: *Link's Estate (No. 1)*, supra. Its authority extends to the determination of all questions arising out of alleged defaults of executors and administrators, and it has all the necessary means of enforcing its decrees: *Carney v. Merchants' Union Trust Co.* 252 Pa. 381, 385; *Heinz's Estate*, 313 Pa. 6, 10. It can compel the return and distribution of property belonging to an estate and wrongfully transferred by the executor to other persons: *Mauser v. Mauser*, 326 Pa. 257. In that case the court held that a bill in equity

was not the proper means for that purpose, saying (p. 259): "The purpose of the bill as to the items of property mentioned therein is to compel its return and a distribution of such property admittedly belonging to the estate of John which, it is charged, was wrong-fully converted by appellees after his death. All of this property is within the jurisdiction of the Orphans' Court, regardless of who may now hold it. . . . The estates of John and his wife are being administered in the Orphans' Court, and its jurisdiction to the end desired is complete and exclusive. . . . That court has the full powers of equity, within its limited jurisdiction, to make any decree necessary to the proper administration of these estates." Also in *Tyson v. Ritten-house*, 186 Pa. 137, 142, it was held that the common pleas has no jurisdiction of a bill in equity seeking to regain possession of property belonging to an estate which was being administered in the orphans' court. The court there said (p. 143): "No matter of settlement or touching the administration of an estate can be drawn within the power of the common pleas. . . . The or-phans' court, in a proceeding to distribute an estate among legatees, next of kin and heirs, has ample power to inquire into and determine all questions standing directly in the way of a distribution to these parties."

It is clear, then, that the orphans' court's grasp of property which it is administering cannot be loosened by proceedings in the common pleas. In the present case, however, the court below was right in denying the relief sought by appellant. In the first place, no proceeding had been properly instituted to recover the property. The account filed by the executor did not show that any distribution, at least of personal prop-erty, had been made to the residuary legatee, and no exception, therefore, was, or could be, filed to the ac-count in that regard. Nor was any petition presented or issue framed concerning a return of the property. No petition for distribution was filed and no decree

of distribution entered. In the second place, while Ellen Miller and Pearl Miller participated by their counsel in the general proceedings before the auditor, neither they nor Harry C. Miller were cited or made parties to any proceeding to compel their surrender of the property received by them. In *Clinton's Estate*, 9 Dist. Rep. 455, 456, it was said by Judge PENROSE: "Can a proceeding to compel restitution by a legatee who received payment in full before any account was filed by the executor be engrafted upon the proceedings before an auditing judge in the settlement and adjustment of the account when filed? Such legatee is in no sense in court as an accounting party, and the principle that in proceedings in account all parties are actors and therefore subject to decree finding balances due by them, respectively, cannot apply. Nor, indeed, is such legatee, though personally in attendance, in court, in the technical sense of the term, at all. Upon what could a decree against him be based, and by what process could it be enforced? The two proceedings are altogether dissimilar, and their joinder is much more than a mere irregularity." And in *Komara's Estates*, 311 Pa. 135, 140, it was said: "In all judicial proceedings, actual or constructive, notice and an opportunity to be heard are essential before anyone's property can be taken from him . . . without his consent . . . Unless the court has the parties before it, by appearance or service of process, it is obvious that it cannot bind them by its adjudications." In *Mains's Estate*, 322 Pa. 243, 247, the failure to make the grantees parties to the proceeding (together with the fact that discovery and accounting were among the remedies asked for) was the reason why relief was denied.

The court below was correct, therefore, in holding that it had no jurisdiction "in this proceeding" to make the decree sought by appellant. It does, however, possess the necessary jurisdiction—and that jurisdiction can now be invoked by appellant—if those against whom

he seeks relief are cited into court and the issue involved is properly formulated on the record. It was stated by counsel at the bar of this court that the administratrix d. b. n. c. t. a. has now filed a final account, and when this is presented for audit, which should be promptly done, and the matter of final distribution is before the court, appellant may obtain the judicial determination which he seeks of his right, and that of Catherine Taylor, to have sufficient property of the estate restored by the residuary legatee, Pearl Miller and Harry C. Miller to permit of the setting up of the trusts. At that time there will have to be considered by the court the question whether, under all the circumstances of the case, these persons can and should be compelled to restore any of the property conveyed to them; whether appellant has been guilty of laches; whether the trusts had been set up by Tierney at the time when he made the conveyances to the residuary legatee, or whether he continued to hold the assets of the estate remaining in his hands in his capacity as executor;[2] whether the assets which he retained were of sufficient value to cover the amount required for the trusts; and from what time interest on the trust legacies was legally payable to the life beneficiaries.

The order of the court below discharging appellant's rule to show cause why the adjudication of October 8, 1936, should not be vacated, set aside, opened, reviewed and corrected, is affirmed, without prejudice to appellant to proceed as herein indicated; costs to abide the final result.

---

[2] See 3 Bogert, Trusts and Trustees, 1837, section 583; *Commonwealth v. Messinger*, 237 Pa. 1, 7; *Skeer's Estate (No. 1)*, 249 Pa. 288, 293. Tierney was removed as trustee under the will in April, 1933. After several ineffectual attempts to procure a successor, Bloomsburg Bank-Columbia Trust Company was appointed as trustee in November, 1936.