## Nieman v. Bethlehem National Bank

*Hugh P. McFadden,* for plaintiff.
*Russell C. Mauch,* for defendant.

McCLUSKEY, P. J., October 2, 1940.—Petition for a rule to show cause why a writ of attachment execution should not be dismissed and quashed.

The facts material to this petition have not been pleaded either in the petition or the answer. In setting forth what we deem to be the relevant facts, we have endeavored to supply the want of pleaded facts by facts stated in petitioner's brief which we take him to admit.

Adam Brinker died, testate, March 4, 1928, a resident of the City of Bethlehem, Pa. Under his will Brinker created certain trusts and named a trustee. On March 15, 1937, the Bethlehem National Bank was appointed by the Orphans' Court of Northampton County substituted trustee of the trusts set up by the will of Adam Brinker. At his death, Brinker was seized of 440 shares of the capital stock of the Bethlehem National Bank. These shares of stock became a part of the trust res. The Bethlehem National Bank, of which these 440 shares of stock represented a part of the capital stock, became insolvent, and the Comptroller of the Currency made an assessment upon stockholders. On April 21, 1939, Benjamin Nieman, re-

ceiver of the Bethlehem National Bank, instituted an action in the United States district court against the Bethlehem National Bank, substituted trustee, to recover the assessment levied upon the shares of stock forming a part of the corpus of the trust and recovered a judgment in the amount of $58,309.50. Plaintiff thereafter filed an exemplified copy of the judgment recovered in the United States district court in the Court of Common Pleas of Northampton County and September 26, 1940, issued a writ of attachment execution on the judgment, attaching all the goods, chattels, and moneys of the Bethlehem National Bank, substituted trustee, in the hands of the Bethlehem National Bank, garnishee.

Petitioner asserts that the writ of attachment execution must be dismissed and quashed on the ground that the writ is based upon a judgment recovered against a decedent's estate and the writ issued after the death of decedent, and that exclusive jurisdiction to distribute a decedent's estate is in the orphans' court.

From the facts pleaded and supplementarily set forth in petitioner's brief, we find it difficult to discover any legal reason why the attachment execution should be quashed.

There is no question but that the orphans' court has exclusive jurisdiction over property belonging to a decedent's estate during the administration of the estate: Slagle's Estate, 335 Pa. 552, 557 (1939) ; and while the estate is being administered under the supervision of the court by executors or administrators the court of common pleas will not entertain a writ of attachment execution to collect a judgment against decedent where decedent died before the writ was issued: Stern & Company v. Harrod et al., 90 Pa. Superior Ct. 327 (1927). But after administration of the estate has been completed and final decree of distribution made, there is no longer any reason in the protection of an equal distribution to creditors which impels the orphans' court to retain exclusive jurisdiction over the property which previously composed the

estate. Had the bank stock, now the subject of suit, been distributed direct to the cestuis que trustent, it could not be maintained that they would remain immune to subsequent assessment, judgment, and execution: 12 U. S. C. §64. The fact that the stock became part of a trust does not prevent liability and although the trustee is not personally liable the fund in the hands of the trustee remains so: 12 U. S. C. §66. Where the insolvency, from which liability to assessment arises, is declared after audit and final order of distribution has been made in the estate, suit has been permitted against a trustee to whom title to bank stock has been transferred: Vandyke v. Favini et al., 28 Fed. Supp. 172 (1939).

In the present case suit was brought in the Federal court against the Bethlehem National Bank as substituted trustee and judgment for an assessment was recovered by the receiver. Since petitioner has not alleged the contrary, we assume that the insolvency of the bank was declared and liability for assessment arose after audit and final decree of distribution in the estate of Adam Brinker and after title to the bank stock had been transferred to the trustee of the trusts created under his will. Having obtained a valid judgment against the trustee it follows that satisfaction of the judgment may be had upon such property as the judgment creditor can discover by the ordinary procedure which the law provides for judgment creditors.

Petitioner argues that under the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 46(g), 20 PS §837, the orphans' court has exclusive jurisdiction over the trust estate and no execution against the trust property can be issued out of a court of common pleas. The Fiduciaries Act provides that the orphans' court shall have exclusive jurisdiction of the accounts of all testamentary trustees. In expounding the meaning of this statute, Mr. Chief Justice Kephart used this language:

"It is clear therefore that the orphans' courts of Pennsylvania have exclusive jurisdiction over the control, ad-

ministration and management of all trust estates created by will and are responsible for the proper management, administration and preservation by the trustees of the trust res": Wilson, Mayor, v. Board of Directors of City Trusts et al., 324 Pa. 545 (1936).

We believe the exposition by Mr. Chief Justice Kephart of jurisdiction was directed to the question then before the court, namely, the administration of a testamentary trust. We do not think that testamentary trustees were impliedly deprived of the privilege of bringing suit in a court of common pleas on simple matters of contract and tort against third parties, the determination of which in no way would be affected by the fact of a testamentary trust. Nor do we think that the legislature or the court intended to confer upon a testamentary trustee immunity from suit by a third person in a court of common pleas. Such an interpretation of the statute would relegate contract creditors of and tort claimants against testamentary trustees, whose claims the testamentary trustee decided to resist, to filing their claims at triennial accountings, while in the interim the trustee preferred trust creditors whose claims he felt impelled to honor with payment: see Cronin's Case, 326 Pa. 343 (1937). Such an interpretation would imperil the rights of those who unwarily extend credit to the trustee without first insisting upon collateral security and must result in severely limiting the credit of a testamentary trustee. Although the question of jurisdiction was apparently not argued in the recent case of Trask v. Shaffer et al., 140 Pa. Superior Ct. 505, an attachment execution was permitted against the interest of a beneficiary under a testamentary trust, and we think the opinion of the Superior Court determines the question that the corpus of a testamentary trust is subject to attachment execution. In the Trask case judgment was had against the life beneficiary and execution sustained against his interest. In the present case judgment was obtained against the trustee because, by reason of the assessment on the stock of the insolvent bank, the

corpus of the trust and the interest therein of all the cestuis became liable for the payment of the assessment. While this is a distinction, we think the questions involved in the Trask case and in the present case are significantly analogous.

And now, October 2, 1940, it is ordered, adjudged, and decreed that the rule to dismiss and quash the attachment execution be denied.