## Follweiler et al. v. Pantazis et al.

*D. L. McCarthy*, for plaintiffs.

*A. Albert Gross* and *Francis H. S. Ede*, for defendants.

BARTHOLD, P. J., February 5, 1951.—This is an action in equity wherein plaintiffs, Edward Follweiler and State Farm Mutual Automobile Insurance Company, ask leave to pay into court the amount of a judgment recovered by Frances Pantazis as administratrix, in a trespass action instituted by her against Edward Follweiler, the operator of the automobile that struck and killed her husband, James Pantazis. The aid of the equity side of the court is also invoked to procure an accounting and distribution of the proceeds of the recovery.

Frances Pantazis, defendant in the present bill, has joined in one trespass suit the cause of action under the wrongful death statute and the cause of action under the survival statute as required by Pa. R. C. P. 213(e). Edward Follweiler filed an answer in which he denied liability and set up as a defense under the heading "new matter", a release signed by Frances Pantazis, individually and as widow of James Pantazis, deceased. In reply to the "new matter", Frances Pantazis averred that she could neither read nor write, that she did not know the contents of the release, and that the release was obtained by fraud. Upon the trial Frances Pantazis suffered a voluntary nonsuit as to the cause of action under the wrongful death statute but pressed her suit as administratrix upon the cause of action under the survival statute. Edward Follweiler chose to rest his case without offering any testimony and without offering to prove the release. Accordingly, the issue relative to the validity of the release was not decided on the trial. A verdict of $7,280 was returned in the survival action for Frances Pantazis, administratrix. Upon appeal by Edward Follweiler to the Supreme Court of Pennsylvania, the verdict and judgment entered thereon was affirmed.

The present bill in equity contains the following specific requests for relief:

"(b) That . . ., Frances Pantazis, individually and (as) administratrix of the Estate of James Pantazis, be required to file a full, true and correct list of all persons, firms and corporations to which James Pantazis was indebted at the time of his death whose claims are unpaid. (c) That . . ., Frances Pantazis, individually, and (as) administratrix . . ., be required to file a full, true and correct list of all hospital, nursing, medical, funeral and expenses of administration necessitated by reason of the injuries sustained by said James Pantazis on January 25, 1946, causing his

death. (d) That an injunction may issue, . . . enjoining and restraining . . . Frances Pantazis, individually, and (as) administratrix . . . , and her heirs, executors, administrators and assigns, in either capacity, from issuing any writ or process out of the Courts of Northampton County against the plaintiffs herein (Edward Follweiler and State Farm Mutual Automobile Insurance Company) or the surety on the appeal bond of Edward Follweiler . . . , to enforce the collection of any portion of the judgment and interest thereon . . . in excess of the unpaid claims of the creditors of James Pantazis, deceased, whose claims arose and were in existence prior to the death of said James Pantazis, the reasonable hospital, nursing, medical, funeral expenses, and expenses of administration necessitated by reason of the injuries sustained by the said James Pantazis causing his death, in violation of the written agreement (the release) of defendant, Frances Pantazis, . . ."

The amended prayer of the bill contains the following additional requests for equitable relief: "(f) That your Honorable Court enter its decree permitting the plaintiffs (Edward Follweiler and State Farm Mutual Automobile Insurance Company) to pay into this Court the amount of the judgment, together with the interest thereon . . . , for distribution among those found legally entitled thereto. (g) That upon payment of the amount of said judgment, together with the interest . . . , that . . . Frances Pantazis and Frances Pantazis, administratrix of the Estate of James Pantazis, deceased, be permanently enjoined from issuing any legal process out of any Court, and permanently enjoined from proceeding on any process already issued out of any Court against . . . Edward Follweiler and State Farm Mutual Automobile Insurance Company, as

well as against the Fidelity and Deposit Company of Maryland, the surety on the appeal bond of Edward Follweiler. . . . (h) That . . . Frances Pantazis, administratrix, . . . be declared to be a trustee for plaintiff of that portion of the judgment, and interest thereon, . . . in excess of the total amount of the claim of the creditors of said James Pantazis at the time of his death and the 'administration expenses' of the estate of . . . James Pantazis, deceased. (i) That it be adjudged . . . that . . . Frances Pantazis, individually, and Frances Pantazis, administratrix of the Estate of James Pantazis, is estopped from claiming any portion of said judgment and interest thereon for the use of Frances Pantazis by reason of her having executed and delivered the general release to said Edward Follweiler and State Farm Mutual Automobile Insurance Company . . . (j) That . . . Frances Pantazis, administratrix of the Estate of James Pantazis, deceased, be ordered and required to execute and deliver to the plaintiffs herein (Edward Follweiler and State Farm Mutual Automobile Insurance Company) an assignment of that portion of the judgment, and the interest thereon, . . . in excess of the total amount of the claims of the creditors of the said James Pantazis at the time of his death and the 'administration expenses' of the Estate of said James Pantazis, deceased."

Frances Pantazis filed one set of preliminary objections as an individual and another set as administratrix. The reasons assigned in summary are: (1) That the cause of action cannot be asserted against her as an individual, inasmuch as the bill discloses that she suffered a voluntary nonsuit in the action for damages for the wrongful death of her husband; (2) that she has a full and complete defense in both capacities which does not require the pro-

duction of evidence to sustain it, viz., that the release was signed by her individually and as the widow of James Pantazis, deceased, and not as administratrix; (3) that plaintiffs, Edward Follweiler and State Farm Mutual Automobile Insurance Company, have a full, complete and adequate remedy at law which they could have asserted by pleading and proving the alleged release at the time of the trial of the trespass action, but that plaintiffs waived their right to raise the issue of the effect of the release by not pleading and proving it at such trial; (4) that the equity court lacks jurisdiction of the subject matter of the controversy.

In considering the questions raised by the preliminary objections, it must be borne in mind that the judgment was recovered in the suit instituted by Frances Pantazis under the survival statute as administratrix of her deceased husband's estate, not in the suit instituted by her under the wrongful death statute. The judgment fixes the amount due the estate of James Pantazis, deceased.

"Generally speaking, a judgment recovered against an insured by an injured party is conclusive on the issues there determined in a subsequent proceeding by the injured party or by the insured against the insurance carrier for indemnity, providing the carrier had notice of the suit and an opportunity to defend.[1] This is merely a specific application of the rule that a judgment against an indemnitee is conclusive in an action against the indemnitor where the indem-

---

[1] Keystone Lumber Co. v. Security Mutual Cas. Co., 103 Pa. Superior Ct. 154, 158; Lamb v. Belt Casualty Co., 3 Cal. App. (2d) 624, 40 P. (2d) 311; Aetna Life Ins. Co. v. Maxwell, 89 Fed. (2d) 988; Lawrason v. Owners' Auto Ins. Co., 172 La. 1075, 136 S. 57; Renschler v. Pizano, 329 Pa. 249, 254.

nitor has knowledge of the suit and an opportunity to defend." [2]

Plaintiffs concede the conclusiveness of the judgment. They state in their brief that, "The validity of the judgment in any respect is not attacked." The proceeds of the recovery therefore belong to the estate.

"The . . . survival, action is not a new action. It existed at common law, and the effect of the Fiduciaries Act of 1917 (sec. 35(b) as enacted July 2, 1937, P. L. 2755, §2, 20 PS §772, often called the Survival Act) is merely to continue in the decedent's personal representatives the right of action which accrued to the decedent at common law because of the tort. The personal representatives bring the action on behalf, and as fiduciaries, of the estate; *the proceeds of the recovery belong to the estate, are available for the payment of the decedent's debts, and are distributed to the legatees or heirs or distributees as general assets of the estate.* The damages are based upon the pecuniary loss which the decedent, not his dependents, suffered by the negligent act which caused his death. Pezzulli v. D'Ambrosia, supra. In survival cases, the action enforces the liability of the tortfeasor to the decedent's estate, not to his relatives or his dependents." [3] (Italics supplied.)

Since the proceeds of the recovery belong to the estate they cannot legally be paid into the common pleas court sitting in equity. Such procedure may be

[2] Philadelphia v. Bergdoll, 252 Pa. 545; Orth v. Consumers Gas Co., 280 Pa. 118; Philadelphia v. Reading Co., 295 Pa. 183; Chester v. Schaffer, 24 Pa. Superior Ct. 162; Renschler v. Pizano, supra, 254.

[3] Funk v. Buckley & Company, Inc., et al., 158 Pa. Superior Ct. 586, 591; Piacquadio, Trustee. v. Beaver Valley Service Co. et al., 355 Pa. 183, 185; Davis' Estate, 56 D. & C. 359, 363.

adopted where the proceeds are recovered under the wrongful death statute, because the fund is compensation to the designated members of the family of decedent for their loss, and is not a part of decedent's estate subject to the claims of creditors,[4] but such procedure may not be adopted in cases where the fund is part of decedent's estate distributable exclusively in the orphans' court.

Plaintiffs state that:

"The object of the . . . bill in equity is to determine what portion of the judgment . . . [is the property of] Frances Pantazis and having determined what that amount is it is the position of the plaintiffs . . . that she (Frances Pantazis) is estopped, because of her release, from claiming the same."

To accomplish this stated purpose, plaintiffs ask the equity court to order the administratrix to give an accounting [of decedent's debts and also to give an accounting] of all hospital, nursing, medical and funeral bills and administration expenses. There is a further request that the equity court declare that Frances Pantazis is not entitled to share in the distribution of the fund.

Patently, these are matters within the jurisdiction of the orphans' court. The very fact that an accounting is required in order to ascertain to what extent Frances Pantazis will share in the distribution of the estate funds in question is a conclusive indication that no useful purpose can be served by paying the money into the equity court.

What is the equity court to do with the fund? It is without jurisdiction to require an accounting of estate funds and make distribution thereof. Plaintiffs' bill is filed under the assumption that decedent had no

[4] Pa. R. C. P. 2206; McFadden v. May, 325 Pa. 145.

creditors and that there are no unpaid claims against the estate. This is an erroneous assumption, particularly since there are unpaid claims of counsel for services rendered in prosecuting to a successful conclusion the very suit that brought about the recovery.

Section 9(e) of the Orphans' Court Act of June 7, 1917, P. L. 363, 20 PS §2245, provides that the jurisdiction of the orphans' court shall extend to and embrace "the distribution of the assets and surplusage of the estates of decedents among creditors and others interested", and subsection (n) provides that such jurisdiction shall include "the exercise of all other powers needful to the doing of anything which is or may be hereafter required or permitted to be done in said court, whether incidental to the powers hereinbefore enumerated or in addition thereto".

In Slagle's Estate, 335 Pa. 552, 557, the Supreme Court held that:

"The orphans' court has *exclusive* jurisdiction of the settlement and distribution of decedents' estates: Appeal of the Odd Fellows Savings Bank, 123 Pa. 356, 360; Tyson v. Rittenhouse, 186 Pa. 137, 143; Link's Estate (No. 1), 319 Pa. 513, 516. Within the orbit of its jurisdiction it has all the powers of a court of chancery: Appeal of the Odd Fellows Savings Bank, supra. Its power to distribute necessarily includes the power to determine all questions essential to a proper distribution: Link's Estate (No. 1), supra. Its authority extends to the determination of all questions arising out of alleged defaults of executors and administrators, and it has all the necessary means of enforcing its decrees: Carney v. Merchants' Union Trust Co., 252 Pa. 381, 385; Heinz's Estate, 313 Pa. 6, 10."

And in the early case of Tyson v. Rittenhouse, 186 Pa. 137, 143, the same court states that:

"No matter of settlement or touching the adminis-
tration of an estate can be drawn within the power of
the common pleas: . . . The orphans' court, in a pro-
ceeding to distribute an estate among legatees, next of
kin and heirs, has ample power to inquire into and de-
termine all questions standing directly in the way of a
distribution to these parties."

The distribution of a decedent's estate among cred-
itors as well as legatees and distributees belongs ex-
clusively to the orphans' court and creditors are bound
to appear and claim their respective debts in this court
or be disbarred from distribution.[5] The orphans' court
has exclusive jurisdiction to determine claims by next
of kin for distributive shares.[6] The power to distribute
includes the power to determine all questions of dis-
tribution.[7]

In paragraphs (h) and (j) of the amended prayer
of the bill, supra, plaintiffs ask that Frances Pantazis
be declared to be a trustee for plaintiffs of that portion
of the judgment in excess of the total amount of the
claims of creditors and the administration expenses,
and that Frances Pantazis, administratrix, be ordered
and required to execute and deliver to plaintiffs an as-
signment of that portion of the judgment in excess of
the total amount of the claims of creditors and the ad-
ministration expenses of the estate. In effect, plaintiffs
claim that they are entitled to such excess on the
ground that Frances Pantazis released to them any
and all right to the same. It is our opinion that title to
the judgment being in the estate, it is exclusively for

---

[5] Hammett's Appeal, 83 Pa. 392; McMurray's Appeal, 101 Pa.
421; Strouse v. Lawrence, Admx., 160 Pa. 421.

[6] Gotwald v. Small, 242 Pa. 239; Clement's Estate, 160 Pa. 391;
Ashford v. Ewing, 25 Pa. 213.

[7] Gerety Estate, 349 Pa. 417; McCahan's Estate, 312 Pa. 515;
King's Estate, 215 Pa. 59; Brandt's Estate, 83 Pa. Superior Ct. 322.

the orphans' court to determine in limine, whether the evidence discloses a substantial dispute as to ownership of the asset.

This is the express holding in Landis v. Landis et al., 343 Pa. 252. As we deem this case controlling, we will review its facts rather fully. Harry H. Landis, Sr., died on June 1, 1934, leaving to survive him, in addition to his widow, two sons, D. Allen Landis and Harry H. Landis, Jr., whom he appointed executors of his estate, and a daughter, Anna Mary Landis. On December 20, 1939, Anna Mary Landis filed a bill in equity against the sons, in their individual capacity, to establish and enforce an alleged oral trust in a $15,000 promissory note which was given to decedent, payable to him on demand, by Harry H. Landis, Jr., on March 9, 1933, and in the possession of D. Allen Landis, unendorsed. The bill averred that decedent "in order to equalize gifts and advancements which he had made to his two sons and losses which he had sustained by reason of assistance rendered to his two sons", had delivered the note to D. Allen Landis subject to an oral trust for her (the daughter's) maintenance and support. Preliminary objections filed by Harry H. Landis, Jr., denying the jurisdiction of the court of common pleas over the subject matter were sustained and a decree was entered in effect dismissing the bill without prejudice to petitioner's right to present a petition to the orphans' court for allowance of her claim. In affirming the decree, the Supreme Court, at page 254, held as follows:

"As the note in controversy is payable, on its face, to the decedent, it is presumed, in the absence of endorsement by him during his lifetime, that ownership continued in him up to the time of his death. See Paxson's Estate, 225 Pa. 204, 210; Keyser's Estate, 329 Pa. 514, 521; Anno. 30 A. L. R. 1492. Title being prima

facie in the estate, which is now being administered in the orphans' court, it is exclusively for that court to determine, in limine, whether appellant's assertions are supported by evidence which in law shows a substantial dispute as to ownership of the asset, and the court of common pleas is without jurisdiction to entertain the cause until and unless the orphans' court, having first determined that question in appellant's favor, shall have submitted to it for trial the issue of title. See Keyser's Estate, supra; Crisswell's Estate, 334 Pa. 266, 271. Appellant cannot short-circuit the case into the common pleas by merely pleading facts which, if properly proven, may establish her title: Criswell's Estate, supra, 271."

Plaintiffs' contention, that they have no standing in the orphans' court to enforce their claim, is without merit. It is within the jurisdiction of the orphans' court to issue restraining orders. The Supreme Court in Heinz's Estate, 313 Pa. 6, at page 10, held that:

"This is statutorily declared . . . in section 16 of the Orphans' Court Act of June 7, 1917, P. L. 363, 373, which states that the orphans' court 'shall have power to prevent, by orders in the nature of writs of injunction, acts contrary to law or equity, prejudicial to property over which they shall have jurisdiction'. Moreover, if there was no statute expressly conferring such right, we would have no difficulty in deciding that, quoad matters within its jurisdiction, the power of the orphans' court 'is only limited by the necessities of the case, and by its duty to administer equity in accordance with established rules'." [8]

In Boles' Estate, 316 Pa. 179, 182, the Supreme Court specifically held that the orphans' court applies equitable principles and, where it has jurisdiction of

[8] Odd Fellows Savings Bank's Appeal, 123 Pa. 356, 365; Carney v. Merchants' Union Trust Company, 252 Pa. 381, 385, 386.

the fund and of all the parties involved, has the power by subrogation to make a decree of reimbursement.

Plaintiffs' contention that it is too late to raise the question of jurisdiction of the subject matter is without merit. Jurisdiction of the subject matter cannot be conferred by estoppel.

"The Act of 1925 (March 5, P. L. 23) is intended to permit appeals from orders concerning purely jurisdictional points before proceedings are had on the merits; but, in order to avail himself of this privilege, appellant is required to raise the jurisdictional question preliminarily (Wilson v. Garland, 287 Pa. 291, 293) and to appeal within fifteen days of the entry of a decision against him: Polakoff v. Marchand College, 287 Pa. 28, 30. . . . The act then further provides that 'a failure to appeal within the time specified will be deemed a waiver of all objections to jurisdiction over the defendant personally'. This clearly prohibits the raising of questions as to jurisdiction of the person at any time thereafter; but it has no such effect where jurisdiction of the subject-matter is the issue involved. The right to appeal directly and preliminarily is lost after fifteen days, whether jurisdiction of person or of subject-matter be the question, but, under the act, failure to appeal creates a waiver only in regard to the former; for jurisdiction of the subject-matter cannot be conferred by estoppel. So far as the latter character of jurisdiction is concerned, after the expiration of the fifteen days, the situation is exactly as it was before the Act of 1925, and the interlocutory order of the court below, except as to jurisdiction of the person, may be considered on appeal after final judgment on the merits": Wettengel v. Robinson et al., 288 Pa. 362, 367, 368.

For the reasons herein given, we are convinced that the court of common pleas, sitting in equity, lacks juris-

diction of the subject matter of the controversy and therefore enter the following

### Decree Nisi

And now, February 5, 1951, it is ordered, adjudged and decreed that plaintiffs' bill in equity be and the same is hereby dismissed at plaintiffs' cost for lack of jurisdiction over the subject matter of the controversy.

The prothonotary shall enter this decree nisi and give notice of the same to the parties or their counsel, and if no exceptions are filed within 10 days, this decree shall be entered by the prothonotary as a final decree.