## Gudalis Estate

*Leonard G. Schumack*, for creditor.

*William J. Krencewicz*, for accountant.

GANGLOFF, P. J., June 27, 1955.—Petitioner, Leonard Chaikowsky, avers in his petition that Martin Gudalis died on June 16, 1954, testate, that Helen Gudalis (now Helen Gudalis Wolsky) qualified as executrix of his estate and that:

"2. The petitioner is a creditor of the said estate, whose claim has not been paid", and he then asks for a citation upon executrix to file an account. A citation was accordingly awarded on March 14, 1955.

If petitioner were required to stand on his petition exclusively the only decree warranted in that event would be a decree dismissing the petition without prejudice; this for the reason that a mere allegation that petitioner is a creditor is not a sufficient showing that he is a party in interest; to qualify as a party in interest a creditor must aver sufficient facts to make

out a prima facie claim: Lightner's Est., 144 Pa. 273; Joyce's Est., 34 D. & C. 549; Bennicas Est., 79 D. & C. 299. This petitioner failed to do.

However, the matter is here for disposition on petition and answer and the answer supplies the missing links in the petition. In her answer respondent executrix first denies that petitioner is a creditor of the estate of Martin Gudalis, deceased, and she then supplies sufficient facts to make out a prima facie case for petitioner as a creditor. She avers that Leonard Chaikowsky, petitioner, is a funeral director, that she paid to him the sum of $678.83 for the burial of Martin Gudalis, that petitioner as funeral director also buried Frances Gudalis, deceased, the wife of Martin Gudalis, and who died before her husband and that the amount claimed by petitioner for the burial of Frances Gudalis is $711.73. We accept these averments as facts: LaBrum v. Commonwealth Title Co. of Phila., 358 Pa. 239.

In view of the foregoing it clearly appears in the pleadings and for reasons hereinafter stated that petitioner's claim is a prima facie claim and that therefore he is a party in interest to the extent that he may ask for an accounting so that his claim may be adjudicated. It must be emphasized here that in determining from the pleadings that petitioner's claim is a prima facie claim we are not deciding that it is or is not a valid claim as against the estate of Martin Gudalis, deceased.

The time for filing an account in the estate of Martin Gudalis, deceased, has arrived and even is past due: see section 701 of the Fiduciaries Act of 1949. It is well settled that funeral expenses in a reasonable amount are proper expenses of administration and the duty of paying such expenses falls primarily upon the personal representative of decedent's estate, at least

to the extent assets are available for the purpose: Kreeger's Est., 277 Pa. 326; Hodge v. Cameron, 132 Pa. Superior Ct. 1; Bair & Sons, Inc., v. Dorris, 147 Pa. Superior Ct. 52; see also Gardner's Est., 323 Pa. 229; Shipley's Est. (No. 1), 337 Pa. 571; Kohler Est., 348 Pa. 55. Where the personal representative fails or refuses to pay such expenses the way is then open to the funeral director, upon a showing of a prima facie claim, to petition the court for a citation upon the personal representative to file an account.

Frances Gudalis, wife of Martin Gudalis, died on June 1, 1954, and her husband followed her in death on June 16, 1954. Frances Gudalis left a will in which she gives her entire estate to her son Edward Turas, but she did not include in her will any reference whatever to payment of her debts and funeral expenses. Martin Gudalis also left a will in which he gives his entire estate to his niece Helen Gudalis and therein he also provides: "I direct that all my just debts and funeral expenses be paid as soon as possible after my decease." It also appears that Martin Gudalis did not, before his death, file an election to take under or against his deceased wife's will. The fact therefore is that the latter will is effective as probated. This is of significance here for the reason that there is no provision included for payment of debts and funeral expenses.

It should be noted here that copies of the wills of the two decedents above mentioned were not furnished as part of the pleadings; we examined the wills as recorded in the register's office Will Book and as a result of this examination we find it necessary to conclude that the procedure outlined in open court to counsel must be modified.

The rule is that a husband is primarily liable for medical attendance and other expenses incident to his

wife's illness and death, although she has a separate estate. If the husband is insolvent the wife's estate is liable, but if there is any balance for distribution, such expenses should be deducted from the husband's distributive share of his wife's estate: Waesch's Est., 166 Pa. 204; Conn's Est., 65 Pa. Superior Ct. 511; McGinnis Est., 109 Pa. Superior Ct. 248; Koska Est., 176 Pa. Superior Ct. 519; Durkin Est., 84 D. & C. 166. A direction in her will that her funeral expenses shall be paid from her estate is in relief of the husband's legal liability, but in the present case there is no direction to pay funeral expenses: Mitchell's Est., 79 Pa. Superior Ct. 208.

Taking the complete record as it is presented to the court, supplemented by an examination of the respective wills of Frances Gudalis and Martin Gudalis, the present status of the matter here for disposition may be stated in substance as follows: Frances Gudalis died about two weeks before her husband, Martin Gudalis; she left a will in which she did not include a provision for relieving her husband from his common law liability for payment of her funeral expenses; her husband also left a will and in it he specifically directs that his debts and funeral expenses shall be paid out of his estate; Leonard Chaikowsky, petitioner, by admission of executrix of the estate of Martin Gudalis, deceased, served as funeral director at the burial of both wife and husband; the general rule is that the surviving husband is primarily liable for the funeral expenses of his deceased wife unless released by her and this is so notwithstanding she may have a separate estate; that such release is not present here and, therefore, he and now his estate must face his common law liability particularly under that provision of his will directing the payment of his debts out of his estate.

In this case petitioner has elected to proceed against the estate of decedent who, under the rule hereinbefore

stated, is primarily responsible for the payment of his claim. If a strict adherence to technical rules of procedure were enforced here, petitioner perhaps could be directed to present his claim in the first place to the estate of the deceased wife and, if successful there, the personal representatives of the deceased wife's estate then would file a claim against the deceased husband's estate for reimbursement. But in the present case petitioner seems to be ready and willing to take the risk, if any, of making his claim direct against the one who, under the law, is primarily responsible for its payment. This procedure, for one thing, will avoid circuity of action and may be the means of saving expense. Rules of procedure which relate only to the usual methods of practice will not be allowed to become a means of working injustice in a court which proceeds according to equitable principles. The orphans' court is such a court: McCaskey's Est., 307 Pa. 172; see also Slagle's Est., 335 Pa. 552. The prayer of petitioner should therefore be granted.

GANGLOFF, P. J., October 24, 1955.—Martin Gudalis died on the 16th day of June, 1954, leaving a last will and testament, in which he named his niece, Helen Gudalis (now Wolsky), as executrix and therein he directs that all his just debts and funeral expenses be paid and he then gives the balance of his estate to his above named niece absolutely.

The inventory and appraisement filed shows that the testator died seized of $1,042.32 in personalty (all in cash) and real estate consisting of 414 East Lloyd Street, Shenandoah, appraised value $1,500.

Executrix filed her account after being ordered to do so by decree of this court entered June 27, 1955, upon petition of Leonard Chaikowsky, who contends he is a creditor of the testator's estate. This account shows total personal estate of $1,042.32 and the credits

claimed amount to $1,477.55, leaving a deficit of personalty in the amount of $435.23. The credits claimed are for funeral expenses, a light bill, a physician's bill and administration expenses. The real estate has not been sold; rents in the total amount of $300 are reported and upkeep charges are $144.24, leaving a rent balance of $155.76.

Testimony in support of the claim of Leonard Chaikowsky was heard. The undisputed facts are that claimant, an undertaker, had charge of the funeral of Frances Gudalis, deceased wife of Martin Gudalis, the testator here, that Frances Gudalis died about two weeks before her husband, leaving a last will and testament in which she gives her entire estate to her son Edward Turas but in which she included no reference whatever to payment of her debts or funeral expenses, that Martin Gudalis, decedent here, in his will directed that all his debts and funeral expenses be paid and that Martin Gudalis did not file an election to take for or against his deceased wife's will. Actually, the only issues before the auditing judge are: (a) Whether the claim of the undertaker must first be filed against the estate of Frances Gudalis, deceased; (b) whether the claim may be filed against the Martin Gudalis estate without first filing against the Frances Gudalis estate; (c) whether the amount of the claim, namely, $711.73, is fair and reasonable; and (d) whether the claim may be paid out of real estate of Martin Gudalis, deceased.

The applicable rule is, as stated in the opinion of this court filed June 27, 1955, in connection with the disposition of the citation to file an account: "The rule is that a husband is primarily liable for medical attendance and other expenses incident to his wife's illness and death, although she has a separate estate. If the husband is insolvent the wife's estate is liable, but if there is any balance for distribution, such ex-

penses should be deducted from the husband's distributive share of his wife's estate: Waesch's Est., 166 Pa. 204; Conn's Est., 65 Pa. Superior Ct. 511; McGinnis Est., 109 Pa. Superior Ct. 248; Koska Est., 176 Pa. Superior Ct. 519; Durkin Est., 84 D. & C. 166. A direction in her will that her funeral expenses shall be paid from her estate is in relief of the husband's legal liability, but in the present case there is no direction to pay funeral expenses: Mitchell's Est., 79 Pa. Superior Ct. 208."

To this may be added Greenhouse's Estate, 57 Montg. 360, where the executor of the deceased wife's estate was surcharged in the amount of medical and funeral expenses of the deceased wife, upon the ground that these expenses are the primary liability of the surviving husband and not of the deceased wife's estate. See also Dowler Estate, 34 Erie 106.

To compel claimant to first proceed against the deceased wife's estate would place a needless burden upon him. But what is more important, filing the claim against the estate primarily liable avoids circuity of action. As to the latter assertion, what is said in Kenna Estate, 348 Pa. 214, at page 219, is pertinent: "It should always be borne in mind by the court that the principal purpose of the creation of the Orphans' Court was to supply a legal tribunal which would function directly and effectively, with a minimum of legalistic procedure and at small expense."

In view of what has been said thus far it is quite clear and we find that Leonard Chaikowsky is not required, as a matter of law, to proceed first against the estate of Frances Gudalis, deceased, for payment of his claim and that Leonard Chaikowsky has a legal right to present his claim against the estate of Martin Gudalis, deceased.

We rule out as incompetent the testimony of claimant relating to the selection of a casket by and the dis-

cussion of funeral arrangements with decedent. The competent testimony is that decedent here actually admitted before his death that the funeral expenses of his deceased wife were his personal obligation and that he would pay the undertaker. Not only under the law but also under the facts there was an obligation on the part of the husband, now deceased, to pay claimant for the burial expenses of deceased wife.

As to the reasonableness of the amount, namely, $711.73, the testimony, uncontradicted, is that this amount represents a sort of in between charge for funeral expenses, that is, it is neither high nor low. Under the testimony and the modern trend in funeral expenses we find that the amount in this case, although somewhat on the generous side, is a fair amount under all the circumstances.

The claim of Leonard Chaikowsky is allowed in the sum of $711.73.

Finally, the contention seems to be that the undertaker's claim, even if allowed, cannot be collected out of the real estate, the only asset remaining on hand. The only credit claimed in the account that is not administration expenses or funeral or medical expenses, all of which are preferred, is $6 paid for light bill. The personal estate is $1,042.32 and the preferred credits amount to $1,471.55, leaving a balance due the accountant of $429.23. Prior to the effective date of the Fiduciaries Act of 1949 the claim of Leonard Chaikowsky would be barred as against the real estate for the reason that the claim was not filed and indexed in the prothonotary's office. However, that is no longer the law. There is now no distinction between personalty and real estate as far as creditors may be concerned. See sections 104, 622 and 751 of the Fiduciaries Act of April 18, 1949, P. L. 512. Leonard Chaikowsky's claim is not a preferred claim but it is quite apparent that the real estate on hand and including

$155.76 in the rent account, less $429.23 due the accountant, is sufficient to pay his claim and the $6 in full.

An award of the real estate in kind to Helen Gudalis Wolsky, the devisee, cannot be made until the Chaikowsky claim is paid. Either executrix should sell the real estate promptly to pay the claim or she should make settlement out of her own funds. In the latter case an award of the real estate may properly be made to her. No matter which course is adopted prompt report must be made to the court to the end that a decree of distribution may be entered.

And now, October 24, 1955, the account as filed is confirmed but subject to further administration as hereinbefore pointed out; a decree of distribution is to be entered only after report is made to the court as hereinabove indicated.